CAYUGA HARVESTER, INC., Doing Business as CALMAR FARMS, Appellant-Respondent, v ALLIS-CHALMERS CORPORATION et al., Respondents, and R. C. CHURCH & SONS, INC., Respondent-Appellant.

Fourth Department, July 11, 1983

APPEARANCES OF COUNSEL

*Melvin & Melvin* (*Louis Levine* of counsel), for appellant-respondent.

*Mackenzie, Smith, Lewis, Michell & Hughes* (*Charlene E. McGraw* of counsel), for respondent-appellant.

*Bond, Schoeneck & King* (*George H. Lowe* and *Thomas R. Smith* of counsel), for respondents.

OPINION OF THE COURT

HANCOCK, JR., J. P.

Under the Uniform Commercial Code, the parties to a sale may, within certain limitations, allocate the risks of their bargain by limiting the remedy of the buyer (Uniform Commercial Code, § 2-719, subd [1], par [a]). When, however, a limited remedy such as an exclusive repair and

replacement warranty fails of its essential purpose, the buyer is relieved of its restrictions and may resort to other remedies as provided in subdivision (2) of section 2-719. The code also permits the parties to agree to exclude consequential damages unless the exclusion is unconscionable (Uniform Commercial Code, § 2-719, subd [3]). Here the contract in issue contains both an exclusive repair and replacement warranty and an exclusion of consequential damages; plaintiff claiming that the limited remedy failed of its essential purpose seeks to recover consequential as well as other damages for breach of warranty. A major question arises from plaintiff's contention that proof of the failure of the limited repair and replacement warranty would free it not only from the restrictions of that clause but also from the clause excluding consequential damages.

The action arises out of the sale of an N-7 harvesting machine manufactured by defendant Allis-Chalmers Corporation (Allis). Plaintiff, the operator of an extensive corn growing business in Cato, New York, purchased the machine for $142,213 from defendant R.C. Church & Sons, Inc. (Church), a farm machinery dealer, under a written purchase order containing a limited repair and replacement warranty and an exclusion of consequential damages. The balance of the purchase price, after a down payment of $36,989.80, was financed through defendant Allis-Chalmers Credit Corporation (Allis Credit). Plaintiff alleges that the machine did not operate or function properly and that it suffered numerous failures and breakdowns preventing it from making a timely and effective harvest of its 1981 corn crop.

The issues considered concerning various sections of the Uniform Commercial Code are as follows:

I.  A. whether the limited repair and replacement warranty failed of its essential purpose (§ 2-719, subd [2]);

B. if so, whether, despite the failure, the consequential damages exclusion remains in effect; and

C. whether the clause excluding consequential damages is unconscionable (§ 2-719, subd [3]; § 2-302, subds [1], [2]).

The following questions, not related to the code and pertaining to the tort causes of action, are also examined:

II. whether in the cause of action for fraud, the buyer may recover consequential damages including damage to its crops and loss of profits or whether such damages are excluded under the rule stated in *Reno v Bull* (226 NY 546) and whether the allegations in the fraud cause of action are of the nature that would support an award of punitive damages; and

III. whether in the causes of action for negligence and strict products liability, the buyer may recover for the destruction of its corn crop allegedly resulting from the defective machine or whether such damages are an economic loss for which recovery is precluded by *Schiavone Constr. Co. v Elgood Mayo Corp.* (81 AD2d 221, 227, revd for reasons stated in dissenting opn 56 NY2d 667).

In its complaint, in which it seeks damages in the amount of $10,000,000, including consequential damages and loss of profits, plaintiff sets forth 10 separately stated causes of action as follows: the first and second against Allis and Church for breach of express warranties; the third and fourth against Church alone for breach of an implied warranty of merchantability and an implied warranty of fitness for purpose; the fifth against Allis and Church for fraud; the sixth against Allis alone for strict products liability; the seventh against Allis alone for negligence in design, testing, inspection, manufacture, distribution, diagnosis, repair, marketing and promotion of the N-7 combine; the eighth against Church alone for negligence in delivery, testing, assembly, inspection, diagnosis, service and repair of the combine; the ninth against Allis Credit and Church for a judgment declaring that plaintiff has no obligation to them by reason of its purchase of the combine; and the tenth against Allis Credit and Church for a return of its down payment.

The issues we address arise in plaintiff's appeal from Special Term's order granting motions for summary judgment made by defendants Allis and Church and dismissing in their entirety the first, second, fifth, sixth, seventh and eighth causes of action and from the denial of its cross motion to amend its complaint by adding a claim for punitive damages to its fifth cause of action for fraud. We agree with the disposition of several additional motions

made in the balance of the order and hold that these determinations should be affirmed for the reasons stated in Special Term's decision.[1] No further discussion of them is required.

## I

We consider first the grant of summary judgment dismissing the first two causes of action against Allis alleging breaches of express warranties. In the purchase order under the "Allis-Chalmers New Farm Equipment Warranty", Allis gave an express warranty limited to the repair or replacement of defective parts in the following provisions which we quote in part:

"WHAT IS WARRANTED

"Allis-Chalmers Corporation (Company) warrants new farm equipment sold by it to be merchantable and free of defects in workmanship and material at the time of shipment from the Company's factory. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSLY STATED HEREIN. The warranty is made to the original purchaser or lessee from an authorized Allis-Chalmers Dealer of each item of new Allis-Chalmers farm equipment.

"1. Equipment Warranty. Parts which are defective in workmanship and material as delivered will be repaired or replaced as follows * * *

---

1. The order granted the motion of defendant Allis to strike the plaintiff's first set of interrogatories as unduly burdensome with leave to plaintiff to serve proper amended interrogatories; denied plaintiff's cross motion for an order dismissing the sixth affirmative defense in the answer of defendants Allis and Allis Credit based on the exclusive remedy clause which limits the company's liability to making repairs or replacements and excludes any liability for consequential damages; granted plaintiff's cross motion to amend its complaint to increase the amount of alleged crop loss from 4,100 tons to 5,130 tons; granted the cross motion of defendant Church for leave to serve an amended answer setting forth certain affirmative defenses; granted the cross motion of defendant Church for summary judgment dismissing plaintiff's fourth cause of action as against it based on an alleged breach of an implied warranty of fitness for a particular purpose upon the ground that such claim is excluded by the terms of paragraph G of the purchase order which provides that the dealer "makes no warranty of his own or on any equipment warranted by Company, and makes no warranty on other items unless he delivers to purchaser a separate written warranty specifically warranting the item" and holding that such exclusion sufficiently complies with subdivision (2) of section 2-316 of the Uniform Commercial Code; and denied the cross motion of defendant Church to dismiss the third cause of action against it based on an implied warranty of merchantability upon the ground that the record presents questions of fact as to whether such warranty was excluded by the terms of the purchase order or by the course of dealing between the parties or usage of trade (Uniform Commercial Code, § 2-316, subd [3], par [c]).

[There follow several paragraphs detailing the terms and conditions of Allis' obligation to make repairs and replacements and the periods during which the warranty is effective.]

"I. REMEDIES EXCLUSIVE

"THE COMPANY'S LIABILITY, WHETHER IN CONTRACT OR IN TORT, ARISING OUT OF WARRANTIES, REPRESENTATIONS, INSTRUCTIONS, OR DEFECTS FROM ANY CAUSE SHALL BE LIMITED EXCLUSIVELY TO REPAIRING OR REPLACING PARTS UNDER THE CONDITIONS AS AFORESAID, AND IN NO EVENT WILL THE COMPANY BE LIABLE FOR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF CROPS, LOSS OF PROFITS, RENTAL OR SUBSTITUTE EQUIPMENT, OR OTHER COMMERCIAL LOSS."

In granting Allis' motions Special Term held that the provision excluding consequential damages in paragraph I, above, was, as a matter of law, not unconscionable under the Uniform Commercial Code (§ 2-719, subd [3]; § 2-302, subd [1]) and that it acted as a total bar to plaintiff's express warranty claims. The court did not find it necessary to reach the issues before us concerning the alleged failure of the essential purpose of the repair and replacement warranty under the Uniform Commercial Code (§ 2-719, subd [2]) and the effect of that failure on the exclusion of consequential damages.

## A

Ordinarily, whether circumstances have caused a "limited remedy to fail of its essential purpose" (Uniform Commercial Code, § 2-719, subd [2])[2] is a question of fact

---

**2.** Subdivisions (1) and (2) of section 2-719 of the Uniform Commercial Code read as follows:

"§ 2-719. Contractual Modification or Limitation of Remedy

"(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

"(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

for the jury and one necessarily to be resolved upon proof of the circumstances occurring after the contract is formed (see *Johnson v Deere Co.*, 306 NW2d 231, 237, 238 [SD]). It should be noted that in order to establish a failure of a limited remedy under subdivision (2) of section 2-719 it is not necessary to show that the warrantor's conduct in failing to effect repairs was willfully dilatory or even negligent. Rather, the section is to apply "whenever an exclusive remedy, which may have appeared fair and reasonable at the inception of the contract, as a result of later circumstances operates to deprive a party of a substantial benefit of the bargain" (*Clark v International Harvester Co.*, 99 Idaho 326, 340; see Uniform Commercial Code, § 2-719, Comment 1; White & Summers, Handbook of the Law Under the Uniform Commercial Code [2d ed], § 12-10). The damage to the buyer is the same whether the seller diligently but unsuccessfully attempts to honor his promise or acts negligently or in bad faith (see *Beal v General Motors Corp.*, 354 F Supp 423, 427 [US Dist Ct, Del, 1973]). Moreover, a "delay in supplying the remedy can just as effectively deny the purchaser the product he expected as can the total inability to repair. In both instances the buyer loses the substantial benefit of his purchase" (*Chatlos Systems v National Cash Register Corp.*, 635 F2d 1081, 1085 [CA3d, 1980]). Thus, if it is found at trial that plaintiff, because of defendant Allis' failure to repair or replace parts within a reasonable time, has been deprived of a substantial benefit of its bargain, it may prevail even though, as is the case here, there is no claim of bad faith or willfully dilatory conduct and the record demonstrates that defendant made extensive efforts to comply.

■ The precise question here is whether plaintiff has made a prima facie showing that the limited remedy failed of its essential purpose. On our review of the record we hold that plaintiff has made such a showing and that Special Term was in error in granting summary judgment dismissing the first two causes of action against Allis in their entirety (CPLR 3212, subd [b]). Mr. Sheckler, plaintiff's president, states in an affidavit "that the N-7 combine

"(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(2) Where circumstances caused an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act."

purchased by plaintiff suffered over 100 mechanical failures and over 100 parts replacements resulting in over 640 actual hours of machine down-time. Because of the inoperability of the N-7 combine a full eight months were required for plaintiff to complete the process of driving the combine over all the acres of corn." Annexed to plaintiff's affidavits are a detailed log of the numerous machine failures and a lengthy list of warranty claims totaling many thousands of dollars submitted by Church to Allis covering work performed and parts supplied from the delivery of the machine in July of 1981 through February, 1982.

■■ It is settled that a finding that a limited warranty has failed of its essential purpose frees the buyer to pursue his remedies under other provisions of the Uniform Commercial Code as if the clause did not exist (see *Wilson & Co. v Smith Int.*, 587 F2d 1363 [CA9th, 1978]; *County Asphalt v Lewis Welding & Eng. Corp.*, 323 F Supp 1300, 1309 [US Dist Ct, SDNY, 1970], affd 444 F2d 372 [CA2d, 1971], cert den 404 US 939; *Johnson v Deere Co.*, 306 NW2d 231, 236 [SD], *supra*). Plaintiff would, therefore, not be precluded by the exclusive remedy clause from recovering under the usual measure of damages in warranty cases; i.e., "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted" (Uniform Commercial Code, § 2-714, subd [2]; see *American Elec. Power Co. v Westinghouse Elec. Corp.*, 418 F Supp 435, 457, 458 [US Dist Ct, SDNY, 1976]; *County Asphalt v Lewis Welding & Eng. Corp., supra*, p 1309; *Johnson v Deere Co., supra*, p 236).[3]

---

3. [2] In subpart B (*infra*) we hold that under the pleadings and the circumstances as alleged here, plaintiff, in the event it prevails under subdivision (2) of section 2-719 of the Uniform Commercial Code, would be barred by the exclusion in paragraph I from recovering consequential damages of the type sought. Plaintiff in its bill of particulars alleges one item of damage (approximately $4,800 in costs for excess rent on grain storage) twice under two different headings, i.e., once as "consequential damages" (Uniform Commercial Code, § 2-715, subd [2]) and once under the heading "incidental damages" for "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable

The order granting summary judgment to defendant Allis should be reversed to the extent that it dismisses the first and second causes of action in their entirety.

B

We come next to the legal question whether the consequential damage exclusion in paragraph I would survive a finding that the limited repair and replacement warranty in that paragraph had failed of its essential purpose. We have found no controlling authority on the point in this State, and the numerous decisions in Federal courts and the courts of other States are in conflict.

As we view it, the problem requires a two-step analysis: first, construing paragraph I in its context as one clause in a contract concerning a substantial commercial transaction in order to ascertain the allocation of the risks as intended by the parties; and, second, determining whether that agreed-upon allocation of the risks leaves "at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract" (Uniform Commercial Code, § 2-719, Comment 1). Paragraph I states: "THE COMPANY'S LIABILITY, WHETHER IN CONTRACT OR IN TORT, ARISING OUT OF WARRANTIES, REPRESENTATIONS, INSTRUCTIONS, OR DEFECTS FROM ANY CAUSE SHALL BE LIMITED EXCLUSIVELY TO REPAIRING OR REPLACING PARTS UNDER THE CONDITIONS AS AFORESAID, AND IN NO EVENT WILL THE COMPANY BE LIABLE FOR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF CROPS, LOSS OF PROFITS, RENTAL OR SUBSTITUTE EQUIPMENT, OR OTHER COMMERCIAL LOSS."

Preliminarily, it may be helpful to set forth two factors which are material to our analysis and, we think, significant: (1) this is not a case involving bad faith or willfully dilatory conduct on the part of the defendant (compare, e.g., *Jones & McKnight Corp. v Birdsboro Corp.*, 320 F Supp 39, 43 [US Dist Ct, ND Ill, 1970]; *Adams v Case Co.*, 125 Ill App 2d 388, 402); and (2) plaintiff, if it should

---

expense incident to the delay or other breach" (Uniform Commercial Code, § 2-715, subd [1]). The excess rental charges for grain storage, we hold, would be the type of "other commercial loss" excluded as consequential damages under paragraph I and would not be recoverable as incidental damages under subdivision (1) of section 2-715 of the Uniform Commercial Code. (See, generally, Uniform Commercial Code, § 2-715, Comment 1; New York Annotations [1], McKinney's Cons Laws of NY, Book 62½, Uniform Commercial Code, § 2-715, p 670; *Rodrigues v Macy & Co.*, 88 Misc 2d 985.)

succeed in proving that the limited warranty has failed, would, regardless of a contrary ruling on the survivability of the consequential damages exclusion, be permitted to recover damages allowed by subdivision (2) of section 2-714 of the Uniform Commercial Code (see subpart A, *supra*).

Plaintiff argues that the promise of defendant to repair and replace defective parts in the first part of paragraph I and the clause exempting defendant from the assessment of consequential damages in the second part are mutually dependent, i.e., that a failure on the part of defendant to perform its obligations under the first, as a matter of law, deprives it of its exemption under the second part and frees plaintiff from its limitations. Defendant, on the other hand, maintains that the two provisions are unrelated and independent.

In our view defendant has the better of the argument. Certainly, no wording in paragraph 1, itself, indicates that the provisions are interrelated or that the failure of defendant to perform under the repair and replacement warranty deprives it of the protection of the consequential damages exclusion. The purposes of the two clauses are totally discrete: that of the first is to restrict defendant's obligations under the transaction to repairing or replacing defective parts, while that of the second is to rule out a specific type of damage. Each clause stands on its own and may be given effect without regard to the other. Thus, the plain meaning of paragraph I appears to favor defendant.

Nor, given the larger context of paragraph I as one term in a transaction involving the sale of an expensive piece of farm machinery to a large commercial grower, would it be reasonable to give it a different construction. Adopting plaintiff's interpretation, defendant's failure to repair and replace defective parts would, despite its good-faith efforts to fulfill its obligations, subject it to a lawsuit for consequential damages and loss of profits which, in view of the size of plaintiff's operation, could result in a recovery many times the value of the N-7 combine. It defies reason to suppose that defendant could have intended to assume such risks. The contrary construction urged by defendant entails a more plausible allocation of the risks and one that the parties could reasonably have had in mind: i.e., that a

failure of the repair and replacement warranty, despite defendant's good-faith efforts to comply, would permit plaintiff to recover the ordinary breach of warranty damages (Uniform Commercial Code, § 2-714, subd [2]) but not loss of profits or other consequential damages.

We find nothing in the Uniform Commercial Code that rules out defendant's construction. On the contrary, under section 2-719 of the Uniform Commercial Code the "parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect" (Uniform Commercial Code, § 2-719, Comment 1), provided that the remedy limitations are not unconscionable and that "there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract" (Uniform Commercial Code, § 2-719, Comment 1). Moreover, subdivision (3) of section 2-719 of the Uniform Commercial Code provides specifically that consequential damages "may be limited or excluded unless the limitation or exclusion is unconscionable." In a similar vein, Comment 3 to section 2-719 states: "Subsection (3) recognizes the validity of clauses limiting or excluding consequential damages but make it clear that they may not operate in an unconscionable manner. Actually such terms are merely an allocation of unknown or undeterminable risks. The seller in all cases is free to disclaim warranties in the manner provided in Section 2-316". In sum, plaintiff has offered no good reason why the consequential damage exclusion clause should not be given effect in these circumstances, where the failure of the repair and replacement warranty is not due to bad faith or willfully dilatory conduct. That the clause be given effect here would be an allocation of the risks which leaves the buyer a fair quantum of remedy as required by the code and one that the parties to this commercial contract could reasonably have intended. We conclude, therefore, that if plaintiff succeeds in establishing that the repair and replacement warranty failed of its essential purpose (Uniform Commercial Code, § 2-719, subd [2]), the exclusion of consequential damages provided by paragraph I remains in effect.

As stated, the decisions are in conflict but the proper rule, we think, is that set forth in *Chatlos Systems v National Cash Register Corp.* (635 F2d 1081, 1086 [CA3d, 1980], *supra*): "The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty * * * The Code, moreover, tests each by a different standard. The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable. We therefore see no reason to hold, as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding consequential damages." (Accord *American Elec. Power Co. v Westinghouse Elec. Corp.*, 418 F Supp 435, 457, 458 [US Dist Ct, SDNY, 1976], *supra; County Asphalt v Lewis Welding & Eng. Corp.*, 323 F Supp 1300, 1308 [US Dist Ct, SDNY, 1970], affd 444 F2d 372 [CA2d, 1971], cert den 404 US 939, *supra;* see *Wilson & Co. v Smith Int.*, 587 F2d 1363 [CA9th, 1978], *supra; V-M Corp. v Bernard Distr. Co.*, 447 F2d 864 [CA7th, 1971]; *Johnson v Deere Co.*, 306 NW2d 231 [SD], *supra.*)

In *V-M Corp. v Bernard Distr. Co.* (*supra,* p 869), the court observed that section 2-719 was "intended to encourage and facilitate consensual allocations of risks associated with the sale of goods", particularly in commercial settings; thus, even "where the defects of the goods cause substantial difficulties to those involved", subdivision (2) of section 2-719 should not be construed "automatically [to] require disregard of the particular limitations upon liability specified by the contracting parties" (see *Wilson & Co. v Smith Int., supra,* p 1375, a case involving good-faith efforts to comply with a repair warranty, to the effect that inability to perform "is not enough to require that the seller absorb losses the buyer plainly agreed to bear", particularly where "to so shift [the risk of loss] is contrary to a contract freely negotiated. The default of the seller is not so total and fundamental as to require that its consequential damage limitation be expunged from the contract").

The leading cases cited as supporting the opposite view are *Jones & McKnight Corp. v Birdsboro Corp.* (320 F Supp

39 [US Dist Ct, ND Ill, 1970], *supra*) and *Adams v Case Co.* (125 Ill App 2d 388, *supra*) (see, also, *Koehring Co. v A.P.I., Inc.*, 369 F Supp 882 [US Dist Ct, ED Mich, 1974]; *Beal v General Motors Corp.*, 354 F Supp 423 [US Dist Ct, Del, 1973], *supra; Clark v International Harvester Co.*, 99 Idaho 326, *supra; Ehlers v Chrysler Motor Corp.*, 88 SD 612; *Goddard v General Motors Corp.*, 60 Ohio St 2d 41; *Murray v Holiday Rambler,* 83 Wis 2d 406).

On analysis, however, neither *Jones & McKnight* nor *Adams* (*supra*) is inconsistent with our holding. Each case involves outright repudiation of the repair and replacement warranty or conduct by the seller that was willfully dilatory. Thus, in *Jones & McKnight* the court held that the buyer was entitled to assume that the seller "would not be unreasonable or wilfully dilatory in making good their warranty in the event of defects in the machinery and equipment" and refused to allow the defendant "to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty" (*Jones & McKnight Corp. v Birdsboro Corp., supra,* p 43). Similarly, in *Adams* the court, in holding that the repair and replacement warranty and the consequential damages exclusion were "not separable" held that "plaintiff could not have made [its] bargain and purchase with knowledge that defendant * * * would be unreasonable, or * * * wilfully dilatory or careless and negligent in making good [its] warranty in the event of its breach" (*Adams v Case Co., supra,* p 402).[4]

We need not decide whether we would follow *Jones & McKnight* and *Adams* if plaintiff could contend, as did the

---

4. In *Koehring Co. v A.P.I., Inc.* (369 F Supp 882 [US Dist Ct, ED Mich, 1974]), a case cited by plaintiff involving the commercial sale of some equipment to a manufacturer, the court in choosing to follow the *Jones & McKnight* and *Adams* line of cases, specifically declined to rule on what its holding would be in the event that failure of the warranty was not willfully dilatory stating: "Although defendants might not be entitled to additional remedies if they fail to prove that plaintiff failed to repair and such failure was wilfully dilatory, a determination of this issue cannot be made on a motion to dismiss as it concerns questions of fact" (*Koehring Co. v A.P.I., Inc., supra,* p 891).

buyers in those cases, that in agreeing to the consequential damages exclusion it never contemplated that defendant would not make good-faith efforts to effect repairs. That issue is not before us.[5]

While not all of the cases following the *Jones & McKnight* and *Adams* rule involve bad faith or willful repudiation of the repair and replacement warranty, several arise from noncommercial sales where the purchaser was an individual consumer (see, e.g., *Clark v International Harvester Co., supra; Ehlers v Chrysler Motor Corp., supra; Goddard v General Motors Corp., supra; Murray v Holiday Rambler, supra*). Moreover, in *Clark v International Harvester Co.* (*supra*), which entailed a purchase of a tractor by an individual custom farmer, the court points to a factor not present in the case at bar, i.e., that there "was a significant disparity in bargaining power between the parties in this case" (*Clark v International Harvester Co., supra,* p 343).

Although we hold that plaintiff may not recover consequential damages, it will, if successful at trial, be entitled to other damages (Uniform Commercial Code, § 2-714, subd [2]). The order granting summary judgment should, therefore, be modified to a grant of partial summary judgment dismissing only those elements of the first two causes of action against Allis which seek consequential damages.

---

**5.** In commenting on *Beal v General Motors Corp.* (354 F Supp 423 [US Dist Ct, Del, 1973]), a case arising from the purchase of a GMC diesel tractor, where there was no allegation of bad faith or repudiation of the repair warranty, Professor Jonathan A. Eddy in On the "Essential" Purposes of Limited Remedies: The Metaphysics of UCC Section 2-719(2) (65 Cal L Rev 28, 88) states: "GM might then have focused upon the distinctions between *Beal,* where consequential damages flowed from an *inability* to repair, and *Birdsboro,* involving *refusal* to repair. Where consequential damages stem directly from the inability of the warrantor to repair, imposition of consequential damages cannot be justified simply on the basis of affording a sanction for breach of the duty. There is no aspect of the warrantor's conduct that should be altered. Of course, the buyer is entitled to compensation for loss of bargain, but that will be given, with respect to direct loss, by section 2-714(2). The apparent 'inequity' presented when defendant's refusal to repair is willful is lacking where defendant has acted in good faith" (emphasis in original). The court in *County Asphalt v Lewis Welding & Eng. Corp.* (323 F Supp 1300, 1308 [US Dist Ct, SDNY, 1970], affd 444 F2d 372 [CA2d, 1971], cert den 404 US 939) suggests that a defendant who has failed in bad faith to perform its contractual obligations to repair "might [be] estopped from asserting exculpatory contractual language."

The dismissal of the first two causes of action against Church presents no such complexity. Special Term properly held that there was no express warranty binding defendant Church in the purchase order and that oral express warranties binding the dealer Church were specifically excluded by the terms of paragraph G: "The selling Dealer makes no warranty of his own on any equipment warranted by Company, and makes no warranty on other items unless he delivers to purchaser a separate written warranty specifically warranting the item. The Dealer has no authority to make any representation or promise on behalf of Company or to modify the terms or limitations of this Warranty in any way."

The order insofar as it grants summary judgment to Church and dismisses the first two causes of action as to it should, therefore, be affirmed.

## C

Finally, we analyze plaintiff's contentions that paragraph I is unconscionable under subdivision (3) of section 2-719 and subdivisions (1) and (2) of section 2-302[6] of the code. A determination as to the conscionability of a contract relates to the circumstances existing at the time of its formation (Uniform Commercial Code, § 2-302, subd [1]). As a practical matter, however, the determination is inevi-

---

**6.** Subdivision (3) of section 2-719 of the Uniform Commercial Code reads as follows: "(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Section 2-302 of the Uniform Commercial Code reads as follows:

"§ 2-302. Unconscionable Contract or Clause

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

tably made after a dispute has arisen. Thus, the agreement must be tested as to conscionability as it is applied to the particular breach which has occurred. Here, there is no claim of bad faith or that the failure to repair was willfully dilatory, and we have held that the parties did not intend in paragraph I that defendant's good faith but unsuccessful efforts to repair would negate the consequential damages exclusion. We have also held that such an agreed upon allocation of the risks does not offend the code requirement that there be at least a fair quantum of remedy for breach of defendant's obligations. We must now decide whether this agreed upon allocation of the risks is unconscionable.[7]

As a general proposition, unconscionability, "a flexible doctrine with roots in equity * * * requires some showing of 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party' (*Williams v Walker-Thomas Furniture Co.*, 350 F2d 445, 449)" (*Matter of State of New York v Avco Fin. Serv. of N. Y.*, 50 NY2d 383, 389). Whether a particular clause when viewed after the dispute has arisen can be said to have been unconscionable when it was made is a question of law for the court (Uniform Commercial Code, § 2-302, subd [1]) to be determined "in the light of the general commercial background and the commercial needs of the particular trade or case" (Uniform Commercial Code, § 2-302, Comment 1). In cases involving transactions of a commercial nature, courts have rarely found unconscionability, and it has been held that "when businessmen contract in a commercial setting, a presumption of conscionability arises" (2 Anderson, Uniform Commercial Code [3d ed], § 2-302:39, p 444, citing *Earman Oil Co. v Burroughs Corp.*, 625 F2d 1291, 1300 [CA5th, 1980]).

Here the transaction was unquestionably commercial (see 1 Anderson, Uniform Commercial Code [3d ed], § 2-104:39, p 544; *Sebasty v Perschke*, __ Ind App __, 404 NE2d 1200). Plaintiff was a corporation which at the time of the contract of sale operated an extensive farming business described by its president, Mr. Sheckler, as "one of the

---

7. As Professor Eddy states: "[T]he correct inquiry as to the exclusion of consequential damages is whether the clause, if construed to apply to the circumstances before the court, is unconscionable". (65 Cal L Rev 28, 92; see, also, discussion at pp 31, 32).

largest corn growers in New York State". No claim is made that Mr. Sheckler was inexperienced in transactions like the one in question. On the contrary, he had been engaged in the farming of grain products for approximately 27 years, had used many harvesting machines, including some manufactured by defendant Allis, and had had prior experience with purchase orders for farm machinery containing terms similar to the ones involved here. In an affidavit he states: "in my 27 years of experience all farm equipment manufacturers require the execution of pre-printed purchase forms containing substantially the same contractual provisions relating to warranties, exclusive remedies and disclaimers of consequential damages."

Nor can plaintiff contend that Mr. Sheckler was unaware of the provisions in the purchase order. The order states in bold type: "I HAVE READ THE WARRANTY AND CONDITIONS ON THE REVERSE SIDE HEREOF AND AGREE THAT THEY ARE A PART OF THIS ORDER." Mr. Sheckler's signature appears immediately beneath this legend. Thus, it appears conclusively that plaintiff was fully cognizant of the warranty provisions and limitations.

On this record, in view of the nature of plaintiff's business as a large commercial grower, the size of the transaction involved, the fact that plaintiff had available other sources for purchasing similar equipment, the experience of its president and his familiarity with similar damage exclusion clauses, we agree with Special Term that plaintiff was not put in a bargaining position where it lacked a meaningful choice; nor was the agreement allocating the risk of crop loss and other consequential damages to the plaintiff, provided that good-faith efforts be made to fulfill the repair warranty, unreasonably favorable to the defendant (see *Matter of State of New York v Avco Fin. Serv. of N. Y.*, 50 NY2d 383, *supra*).

The significant facts germane to the conscionability issue were essentially undisputed and we hold that Special Term correctly determined, as a legal question, that paragraph I was not unconscionable and properly did so on the affidavits and other documents before it without the aid of a hearing (see Uniform Commercial Code, § 2-302).

## II

In its fifth cause of action against Allis and Church, plaintiff alleges fraud based on false representations and willful and knowing concealment of material facts pertaining to the N-7 combine. The basis for the grant of summary judgment and dismissal of the cause of action as to both defendants was not that fraud was improperly pleaded or insufficiently demonstrated in plaintiff's answering affidavits, but that the only damages alleged — the consequential damages resulting from the destruction of plaintiff's corn crop — did not constitute "actual pecuniary loss" but rather "benefit of the bargain" damages which are not recoverable. Defendants on appeal urge that the order should be affirmed under the rule stated in *Reno v Bull* (226 NY 546, *supra*) that in a fraud action, plaintiff's recovery is limited to the pecuniary loss sustained and that all "elements of profit are excluded" (*Reno v Bull, supra,* p 553). We think the rule is misapplied.

There is no question that in New York[8] damages for fraud are limited to indemnity for the actual loss sustained and that loss of the benefit of the bargain as represented by the wrongdoer is not recoverable (see *Reno v Bull, supra*). In an action for breach of contract the "injured party is entitled to the benefit of his bargain as written and is entitled to damages for the loss caused by failure to perform the stipulated bargain" (*Sager v Friedman,* 270 NY 472, 481) and the recovery "may include the profits which he would have derived from performance of the contract" (*Sager v Friedman, supra,* p 481). In a fraud action, by contrast, "the injury is the inducement to make a contract which otherwise would not have been made, and the measure of damages is indemnity for loss suffered through that inducement" (*Sager v Friedman, supra,* p 481). Stated simply, fraud damages are to give the plaintiff what he lost because he made the bargain, not what he would have

---

8. Originally, New York adhered to the majority view that a defrauded purchaser may recover the difference between the actual value of the property purchased and the value that it would have had if the misrepresentations had been true, i.e., the "benefit of the bargain" rule (see, e.g., *Krumm v Beach,* 96 NY 398; *Whitney v Allaire,* 1 NY 305). In 1919, the court in *Reno v Bull* (226 NY 546) rejected the old view and adopted the minority, or "out of pocket", rule (see, also, *Sager v Friedman,* 270 NY 472; *Hotaling v Leach & Co.,* 247 NY 84; see, generally, Ann., 124 ALR 37, 62).

gained had it been performed. Thus, plaintiff's expectations of profits on a resale or other damages which would put him in a better position than he would have been in had he not made the bargain are excluded (see *Sager v Friedman, supra,* p 483).

The damages sought here — the loss of the corn crop which plaintiff claims it would not have sustained had it not been induced to buy the defective machine — are not precluded by *Reno v Bull (supra).* In *Reno,* where plaintiff purchased stock in reliance on the fraudulent representations as to value made by defendant, the court held that plaintiff was not entitled to the difference between the value of the stock at the time of the sale and the value of the stock as it would have been at that time if the representations were true. Instead, he was entitled to his actual pecuniary loss: i.e., the difference between what he paid for the stock and the actual value of the stock he received (see *Reno v Bull, supra,* p 553). In short, he was entitled to what he lost, not what he might have gained.

In plaintiff's fifth cause of action the damages sought do not result from the diminished monetary value of the machine or from the fact that plaintiff could not resell it at a profit, but from the machine's continued malfunction which resulted in the destruction of plaintiff's corn. But for plaintiff's decision to buy defendants' machine in reliance on their misrepresentations, instead of some other machine which would have worked properly, plaintiff asserts, its corn crop would not have been lost. As to the 1981 corn crop, plaintiff seeks not to recover "benefit of the bargain" damages but rather to be put in the position he would have been in if he had not made the purchase, through the recovery of damages for the value of the crops destroyed or not harvested. Whether the loss of the corn crop and any other consequential damages established resulted directly from the alleged wrongs of the defendants are, of course, questions of fact for the jury.

*Jeffrey v Bigelow* (13 Wend 518, cited in *Hotaling v Leach & Co., supra,* p 92, and 24 NY Jur, Fraud & Deceit, § 266) is in point. Plaintiff bought sheep from defendants' agent who had fraudulently concealed their diseased condition. He was permitted to recover "not the mere difference

between a diseased sheep and a healthy one, but the damage sustained by communicating the disease to the plaintiff's flock" (*Jeffrey v Bigelow, supra,* p 523). The resultant damage to the plaintiff's flock, like the loss of the corn crop here, was a direct consequence of the fraud and would not have occurred without it. (See 2 Sedgwick, Measure of Damages [9th ed], § 441, particularly discussion of *Fultz v Wycoff,* 25 Ind 321, in which plaintiff, who kept defendant's horse in his stable in reliance on defendant's false representation that the horse was well, was allowed to prove as an element of damages the earnings lost when two of his stallions contracted distemper from defendant's horse.)

Defendants would have us apply the court's statement: "All elements of profit are excluded" (*Reno v Bull, supra,* p 553) as an inflexible rule categorically precluding damages based on the market value of plaintiff's lost crops because such value would include some element of profit. That the rule in *Reno v Bull* (*supra*) is not to be applied in such arbitrary fashion is explained in *Hotaling v Leach & Co.* (247 NY 84, 92, *supra*): "Proximate damages may not be fixed by arbitrary rule. Sometimes other damages flow from fraud in inducing a purchase, besides the difference between the price paid and the value of the article received. Consequential damages may also be awarded." As stated, plaintiff here does not seek profits based on the bargain it was fraudulently induced to make but the loss sustained because it made the bargain. Any profits that might be included in its recovery would not be profits from an anticipated resale of the machine or from an expected increase in the value of plaintiff's investment in it as in *Reno* but rather profits that plaintiff would normally receive from its corn crop if sold at market value as a return on its investment in labor, seed, fertilizer and other expenses in the crop. These profits, it claims, as well as the expenditures, were lost when the corn was destroyed.

We hold, therefore, that plaintiff's pecuniary loss resulting directly from defendant's wrongful conduct which induced the purchase and resulted in the loss of his crops may be recovered in the cause of action for fraud. Accord-

ingly, the order granting summary judgment as to the fifth cause of action should be reversed.

Plaintiff's allegations are insufficient to support an award of punitive damages; such damages may be recovered in a fraud action only where "the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives" (*Walker v Sheldon,* 10 NY2d 401, 404; see *Garrity v Lyle Stewart, Inc.,* 40 NY2d 354, 358; 14 NY Jur [rev vol], Damages, §§ 179, 180). Thus, denial of the cross motion to amend the complaint to claim such damages was proper.

### III

In the sixth and seventh causes of action against Allis based on strict products liability and negligence and the eighth cause of action against Church based on negligence, plaintiff alleges that because of defects in the N-7 combine it was "unable to timely harvest its 1981 corn crop" with the result that "4,100 tons of corn were destroyed and that portion of plaintiff's crop which it has been able to harvest was greatly diminished with resultant consequential and incidental damages to plaintiff all in the amount of $10,000,000."

■ The law is now settled in New York that if the loss of plaintiff's crops and the consequential damages resulting therefrom are "economic damages", plaintiff cannot recover (see *Schiavone Constr. Co. v Elgood Mayo Corp.,* 81 AD2d 221, 227, revd for reasons stated in dissenting opn, Silverman, J., 56 NY2d 667, *supra; Hole v General Motors Corp.,* 83 AD2d 715; *Dudley Constr. v Drott Mfg. Co.,* 66 AD2d 368, 372-375). The Court of Appeals in its reversal in *Schiavone* on the rationale of the dissenting opinion at the Appellate Division (81 AD2d 221, 227-234) has necessarily rejected the contrary view in *Santor v A & M Karagheusian, Inc.* (44 NJ 52) and embraced the majority rule as stated by Chief Justice Traynor in *Seely v White Motor Co.* (63 Cal 2d 9, 18): "The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an under-

standing of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. *He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands*" (emphasis added). The *Seely* rule applies whether the damages are sought under a strict products or negligence theory (*Seely v White Motor Co., supra,* p 18; see *Hole v General Motors Corp., supra; Wilson & Co. v Smith Int.,* 587 F2d 1363 [CA9th, 1978], *supra;*[9] *Clark v International Harvester Co.,* 99 Idaho 326, 332-336, *supra*).

*Schiavone* and *Dudley Constr. (supra)* are illustrative applications of the *Seely* rule. In *Schiavone* a truck hoist purchased by plaintiffs malfunctioned and "as a result plaintiffs suffered damages consisting of the cost of repairs to put the equipment into reasonably operable condition, and other economic loss due to downtime, loss of production, additional labor incurred, and equipment rentals" (*Schiavone Constr. Co. v Elgood Mayo Corp., supra,* pp 227-228). No recovery was allowed. In *Dudley* a crane suffered a structural failure when certain bolts connecting the superstructure to the undercarriage broke and the superstructure came off its mounting and crashed to the ground along with the attached boom and load. In holding that the resultant physical destruction of the crane was the type of damage which would be permitted under the *Seely* rule we stated: "We hold therefore that defendants Drott and Case

---

9. In *Wilson & Co.,* the court in rejecting plaintiff's damage under the negligence counts stated: "Where the suit is between a nonperforming seller and an aggrieved buyer and the injury consists of damage to the goods themselves and the costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code. See Keeton, *Torts, Annual Survey of Texas Law,* 25 Sw.L.J. 1, 5 (1971); Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective-Product Cases,* 18 Stan.L.Rev. 974, 996-97, 1012-14 (1966). To treat such a breach as an accident is to confuse disappointment with disaster. Whether the complaint is cast in terms of strict liability in tort or negligence should make no difference" (*Wilson & Co. v Smith Int., supra,* p 1376).

Company in manufacturing and marketing the crane owed a duty to plaintiff under the doctrine of strict products liability as defined in *Codling v Paglia* (32 NY2d 330 * * *) not to place into the stream of commerce a crane containing defective bolts — the failure of which would create a danger of physical injury resulting to plaintiff's property whether it be injury to property extrinsic to the crane or to portions of the crane itself consequentially damaged as a result of the bolts' failure. * * * [T]he damages sought here flow proximately from defendants' breach of its legal duty in manufacturing and marketing a large and complex machine containing a defect in a key structural part which gave way resulting in physical damages to extensive portions of the machine which were not defective and which would have been unharmed but for the crane's collapse" (*Dudley Constr. v Drott Mfg. Co., supra,* pp 372-373).

Plaintiff seeks to distinguish *Schiavone* (*supra*) and to bring itself within the *Dudley* exception by alleging that the wasting and spoilage of its crops are in the nature of physical or property damage akin to the damage caused to the crane in *Dudley*. The brief answer is that plaintiff suffered damages because the combine, like the truck hoist in *Schiavone,* did not perform as promised — not because defendants committed the tort of placing a defective and dangerous machine into the stream of commerce which could and did collapse causing extensive physical damage as in *Dudley*. Plaintiff's remedy, then, is not in tort but in contract. Its damages are those permitted by the purchase order and the pertinent provisions of the code. As the court in *Clark v International Harvester Co.* (99 Idaho 326, 336, *supra*) — a case involving a farmer's tractor which did not operate properly — put it: "[T]he law of negligence does not impose on International Harvester a duty to build a tractor that plows fast enough and breaks down infrequently enough for Clark to make a profit in his custom farming business."

We conclude that the court properly granted summary judgment dismissing the sixth, seventh and eighth causes of action in their entirety.

The order should be modified in accordance with this opinion and as modified affirmed.

CALLAHAN, DENMAN, MOULE and SCHNEPP, JJ., concur.

Order unanimously modified, and as modified affirmed, without costs, in accordance with opinion by HANCOCK, JR., J. P.