**HARPER TAX SERVICES, INC., et al.**

v.

**QUICK TAX LTD., et al.**

Civ. No. Y–85–3170.

United States District Court,
D. Maryland.

May 11, 1988.

**110**

James L. Mayer, Ellicott City, Md., for plaintiffs.

James H. Daly, and Leonard Lucchi, Upper Marlboro, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

Plaintiffs, Harper Tax Services, Inc. ("Harper") and Professional Automated Support Services ("PASS"), Maryland corporations which provide computer-based accounting services, brought this action against Quick Tax, Ltd., a New York company, alleging that PASS placed an order with Quick Tax through Victor Business Products for computer software designed for preparing Maryland and federal tax returns for the 1982 tax year. This order was accepted by Quick Tax and the computer software was delivered to Harper on time. However, Harper discovered that the computer programs delivered were designed for the 1981 tax year. Quick Tax was notified and it forwarded new software packages for the correct tax year. However, plaintiffs claim that the new software packages contained defective programming which rendered the software useless for tax preparation purposes. Specifically, they allege that the federal tax package would not process and print data reliably and that the state tax package was not designed for Maryland tax preparation. Plaintiffs further allege that "updated versions" of the new packages later supplied by Quick Tax did not correct the defects

before April 15, 1983, the end of the 1982 tax season. Thus, plaintiffs claim that defendant did not provide them with software usable for preparation of 1982 tax returns, nor did it refund any payments made by plaintiffs.

In addition, plaintiffs allege that defendant made false representations as to the capability and usefulness of the software and that it was fully aware that PASS and Harper were relying on those representations in planning the complete computerization of Harper's accounting business including the purchase of computer equipment for use with the defendants' software. Plaintiffs' action is based on breach of contract and fraud, and alleges damages of loss of income, loss of profits, and loss of clientele and good will.

Defendant seeks partial summary judgment as to privity of the sales contract and the exclusion of liability for consequential damages, asserting that Harper was not a party to the "Software License Agreement," a standard form sales contract, dated October 15, 1982, identifying PASS as the "Customer," and signed by Eileen Piver, an officer of PASS, as the "Purchaser." In their response, plaintiffs attached a complete copy of this agreement and Piver's affidavit. However, they assert that before the contract was signed, Quick Tax was fully aware of PASS's intent to confer the benefits of the contract upon Harper. Further, they assert that Quick Tax represented to them that the software would meet the needs of both PASS and Harper in preparing tax returns.

## PAROL EVIDENCE

■ "There is probably no more frequent application of the parol evidence rule than in cases where it is sought to attach a parol warranty to a written contract, usually of sale or to sell goods." 4 Williston, *A Treatise on the Law of Contracts* § 643 at 1077 (W. Jaeger 3rd ed. 1961). In the instant case, plaintiffs rely upon a written license agreement to establish a contract, yet urge the Court to ignore its express limitations in favor of performance warranties allegedly made during the course of

negotiating the contract. The use of such extrinsic evidence is governed by New York Uniform Commercial Code § 2–202 (McKinney's 1964): "Terms ... set forth in a writing intended by the parties as a final expression of their agreement ... may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by a course of dealing ... and (b) by evidence of additional consistent terms...." Such extrinsic evidence is subordinated, however, if inconsistent with express terms of the agreement. *Id.* § 1–205(4). *See Computerized Radiological Services, Inc. v. Syntex Corp.,* 595 F.Supp. 1495, 1507 (E.D.N.Y.1984), *rev'd on other grounds,* 786 F.2d 72 (2nd Cir. 1986). *See* 51 N.Y.Jur., Sales § 165 (1966).

Plaintiffs cite from the written license agreement and agree that its specification of New York contract law is applicable. In arguing that the contract's exclusion of consequential damages provision is unconscionable, they state that "Quick Tax Ltd. provided the Plaintiffs with a take-it-or-leave-it form agreement with no room for negotiation." Response at 5. Thus, although plaintiffs attempt to circumvent the unfavorable portions of the contract, they nonetheless confirm the apparent finality of the written license agreement as the expression of the terms of the contract. The Court finds that the written license agreement was intended to be such a final expression of terms. Moreover, paragraph 8 of the document contains a typical merger clause: "This agreement constitutes the entire agreement between Quick Tax and the Customer and shall not be modified or rescinded except in writing signed by both parties." Although plaintiffs have alleged fraud generally, they have not alleged that their agent Piver acted under any threat or duress in signing the agreement. Thus, the Court must ignore plaintiffs' allegations that binding performance warranties existed in the understanding of the parties at the formation of the agreement, at least as to the breach of contract claim.[1]

1. It appears that parol evidence is admissible to establish fraud. *See* Annot., 71 A.L.R.3d 1059,

## HARPER'S STANDING

Harper Tax Services was not a party to the contract but claims recognition as a third-party beneficiary under its terms, pursuant to N.Y.U.C.C. § 2–318, which provides as follows:

A seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may use, consume, or be affected by the. goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

The statute extends contractual rights only to "natural persons" who are "injured in person." Harper is a corporation claiming commercial damages and so is doubly beyond the purview of § 2–318. Moreover, even if Harper were to be considered a third-party beneficiary, it would be bound by any valid remedial limitations specified in the contract under which it claims protection. *American Electric Power Co., Inc. v. Westinghouse Electric Corp.,* 418 F.Supp. 435, 449–50 (S.D.N.Y.1976). Thus, plaintiff Harper's breach of contract claim will be dismissed.

## LIMITATION OF REMEDY

Paragraph 6(a) of the license agreement provides a typical limitation of remedies: "THERE ARE NO WARRANTIES, WHETHER EXPRESS OR IMPLIED, EXCEPT AS EXPRESSLY SET FORTH HEREIN. THERE ARE NO WARRANTIES OF MERCHANTABILITY, FITNESS FOR USE, NOR FITNESS FOR THE USE INTENDED." Paragraph 6(b) provides for a specific, limited warranty and remedy. "Quick–Tax warranties the PROGRAM MATERIAL to be free of program coding errors when delivered.... In the event coding errors are discovered subsequent to the Customer's acceptance, Quick–Tax's sole responsibility will be to supply corrections to the Customer at no charge." Plaintiffs argue that this explicit limitation of their remedy to the correction of pro-

1060 (1976).

gram errors may be ignored as having failed in its essential purpose inasmuch as the programs were not corrected before the end of the 1982 tax preparation season. Plaintiffs rely upon N.Y.U.C.C. § 2–719(2) which provides as follows: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act."

There may be some merit to plaintiffs' claim that circumstances changed sufficiently for the Court to view the limited remedy as affording "no remedy at all" or as depriving the plaintiffs of the "substantial benefit of the bargain" because of the delay in supplying the operational software package promised. *See Syntex Corp., supra,* 595 F.Supp. at 1510; *Wilson Trading Corp. v. David Ferguson, Ltd.,* 23 N.Y.2d 398, 403–04, 244 N.E.2d 685, 687–88, 297 N.Y.S.2d 108, 112–13 (1968); *Cayuga Harvester, Inc. v. Allis–Chalmers Corp.,* 95 A.D.2d 5, 12, 465 N.Y.S.2d 606, 612 (4th Dept.1983). Nonetheless, a failure of a limited contractual remedy in its essential purpose does not invalidate independent clauses which specifically limit the type of damages which are recoverable for breach. *Syntex, supra; American Electric Power Co., supra,* 418 F.Supp. at 458; *Cayuga Harvester, supra,* 95 A.D.2d at 16, 465 N.Y.S.2d at 614 ("The limited remedy of repair and consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty.... The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable.") (quoting *Chatlos Systems, Inc. v. National Cash Register Corp.,* 635 F.2d 1081, 1086 (3rd Cir.1980)).

EXCLUSION OF CONSEQUENTIAL DAMAGES

Paragraph 6(c) of the license agreement provides that "Quick–Tax will not be liable for any lost profits, or for any claims or demand against the Customer by any other party, except a claim for patent or copyright infringement as provided herein." A broader limitation of damages appears prominently in paragraph 6(d): "IN NO EVENT WILL QUICK–TAX BE LIA-

BLE FOR CONSEQUENTIAL DAMAGES EVEN IF QUICK–TAX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES." Plaintiffs assert that this exclusion was unconscionable. Such an assertion is for the Court to resolve. *Wilson Trading Corp., supra,* 244 N.E.2d at 688, 297 N.Y.S.2d at 112–13; N.Y.U.C.C. § 2–302(1).

Restriction of the parties' freedom to limit contract damages is addressed by N.Y.U.C.C. § 2–719(3):

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Thus, the agreement's exclusion of consequential damages for breach of contract is not *prima facie* unconscionable. That the agreement was an adhesion contract—of pre-specified form and not actually negotiated—does not lead to the conclusion that it was unconscionable: parties routinely purchase products without expecting to negotiate the terms of sale with the seller and there is "nothing unusual in this limitation of damages, it being common in these types of commercial agreements...." *Bakal v. Burroughs Corp.,* 74 Misc.2d 202, 205, 343 N.Y.S.2d 541 (1972). *See also Consolidated Data Terminals v. Applied Digital Data Systems, Inc.,* 708 F.2d 385, 392 n. 6 (9th Cir.1983) (applying New York law: "remedy limited to repair is not unconscionable per se"). Such standard form agreements offer the non-drafting party the choice of accepting or rejecting the contract as drafted. *Finkle and Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505, 1511 (S.D.N.Y.1985). The non-negotiable nature of adhesion contracts might appear to meet a popular definition of unconscionability: "an absence of meaningful choice on the part of one of the parties together with contract terms which are unfavorable to the other party." *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965). However, mere non-negotiability or inequality of bargain-

ing power do not render an adhesion contract's terms unconscionable. *Finkle and Ross, supra.* "The principle is one of the prevention of oppression and unfair surprise ... and not of disturbance of allocation of risks because of superior bargaining power." N.Y.U.C.C. § 2–302, Official Comment 1. Plaintiffs do not allege undue influence, force, or threats to sign the license agreement, nor can they argue that the exclusion of consequential damages or limitation of the remedy was uncertain. PASS, the "Customer" and "Purchaser" in the license agreement, entered the agreement for commercial purposes with full notice of the express and conspicuous restrictions on its rights and remedies under the contract. *See Cayuga Harvester, supra,* 465 N.Y.S.2d at 617. Indeed, that is precisely the value of this type of standard form contract. Plaintiffs' complaint that they were presented with "take-it-or-leave-it" restrictions comes too late—they were free to reject the terms or offer to pay more for greater financial security. The fact that plaintiffs were especially vulnerable to delayed delivery does not mean that it was unconscionable for defendant to offer no insurance for business losses. The fairness of business deals premised upon clear allocations of risk cannot be judged in hindsight.

## DAMAGES FOR FRAUD

 Defendant also seeks to limit damages available to plaintiffs on their fraud claim. Under New York law the measure of damages for fraud is the actual pecuniary loss, that is, the difference between the amount paid and the value of the goods received.[2] 60 N.Y.Jur.2d, Fraud and Deceit §§ 242–43 (1987). Thus, in New York, it has long been the rule that damages for lost profit are not available in fraud claims. "The purpose of an action for deceit is to indemnify the party injured. All elements of profit are excluded. The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong." *Reno v. Bull,* 226 N.Y. 546, 553, 124 N.E. 144, 146 (1919).

*Accord Seiko Time Corp. v. Video Associates, Inc.,* 99 A.D.2d 941, 472 N.Y.S.2d 633 (1st Dept.1984); *Clearview Corp. v. Gherardi,* 88 A.D.2d 461, 467–68, 453 N.Y.S.2d 750 (2nd Dept.1982). " 'Out-of-pocket' considerations do not, however, prevent recovery of other consequential damages proximately caused by reliance upon the misrepresentations." *Clearview Corp., supra,* 88 A.D.2d at 468, 453 N.Y.S.2d at 755. *Cf. Stahl Management Corp. v. Conceptions Unlimited,* 554 F.Supp. 890, 894–95 (S.D.N.Y.1983) (consequential damages for computer software breach of contract claim). Of course, plaintiffs must first prove the five elements of fraud: 1) a material representation of fact, 2) false and known false by the defendant, 3) made to induce reliance, 4) and upon which plaintiffs did justifiably rely, 5) causing injury. *Clearview Corp.* 88 A.D.2d at 467, 453 N.Y.S.2d at 754–55; 60 N.Y.Jur.2d, *supra,* § 223. Furthermore, fraud must be proven by clear and convincing evidence. *Syntex, supra,* 595 F.Supp. at 1503, 786 F.2d at 76.

## PLAINTIFFS' MOTION TO AMEND COMPLAINT

 Plaintiffs initiated this action on July 25, 1985, with a complaint in two counts. On September 20, 1985, they filed an amended complaint adding additional defendants. Later, defendants other than Quick Tax, Ltd. were dismissed by plaintiffs. Defendant's motion for partial summary judgment, filed December 15, 1987, and the foregoing analysis in this memorandum address that complaint. On April 29, 1988, six weeks before the scheduled trial date, plaintiffs have moved, pursuant to Fed.R.Civ.P. 15(a), to amend their complaint once again to "simplify and streamline the Complaint erasing all references and allegations which formerly included the dismissed parties, and to add one count of negligent misrepresentation." Although amendment of a complaint is to be liberally granted, *Donovan v. Porter,* 584 F.Supp. 202, 207 (D.Md.1984), the Court may deny amendment where it would be futile or

---

**2.** Some jurisdictions adhere to the "benefit of the bargain" measure. *See Cayuga Harvester,* *supra,* 465 N.Y.S.2d at 618 n. 8; 37 Am.Jur.2d Fraud and Deceit §§ 351, 362.

would cause undue prejudice to the opposing party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Court finds that the plaintiffs' proposed amendment offers a new legal theory without significant change in the factual allegations, that plaintiffs offer no good reason why the addition of a negligent misrepresentation count has come so late in the litigation, and that the proposed complaint continues to state an action for fraud rather than negligence.

Like the first two complaints, plaintiffs' proposed second amended complaint alleges that defendant made material representations knowing of their falsity and that both plaintiffs intended to rely on those representations (¶¶ 16–17) and that additional false representations were made with reckless indifference or disregard of the truth (¶¶ 17, 19). The proposed new count itself incorporates the previous factual allegations (¶ 23) and describes "Defendant's fraudulent misrepresentations" (¶ 24). Nowhere in the three editions of plaintiffs' complaint are there alleged any non-intentional acts of the defendant which would state an action for negligent misrepresentation rather than for fraud under New York law. In denying plaintiffs' motion to amend, the Court dwells not on formalistic pleading but rather upon the nature of the allegations made by plaintiffs which have formed the basis of discovery and upon which trial is scheduled.

Under New York law a claim of negligent misrepresentation is stated only in special circumstances and upon certain allegations including the existence of a nexus of intimacy of the parties approaching that of privity and closer than that of ordinary buyer and seller. *Mathis v. Yondata Corp.,* 125 Misc.2d 383, 387–88, 480 N.Y.S. 2d 173 (1984) (citing *International Products Co. v. Erie R.R. Co.,* 244 N.Y. 331, 338, 155 N.E. 662, *cert. denied,* 275 U.S. 527, 48 S.Ct. 20, 72 L.Ed. 408 (1927); 60 N.Y.Jur.2d, *supra,* § 126. But allegations of intentional conduct are not applicable to a claim of negligent misrepresentation. *Mathis, supra,* 125 Misc.2d at 386, 480 N.Y.S.2d at 176. However, allegations of either intentional or reckless misstatements

state an action for fraud or deceit. The leading New York case, *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931), resisted a trend to recognize parallel negligence and fraud actions by accepting a broader view of the latter: "Fraud includes the pretense of knowledge when knowledge there is none.... If such a statement was made, whether believed to be true or not, the defendants are liable for deceit in the event that it was false." *Id.* at 179–80, 174 N.E. at 444. "Even the narrowest holdings as to liability for unintentional misstatement concede that a representation in such circumstances may be equivalent to a warranty." *Id.* at 183, 174 N.E. at 446. Thus, plaintiffs' factual allegations clearly state an action for fraud. Furthermore, if plaintiffs did intend to allege negligent acts of the defendant, their claim would also be barred by the flip-side of the *Ultramares* decision regarding governance of negligence actions by the contract.

> Our holding does not emancipate accountants from the consequences of fraud. It does not relieve them if their audit has been so negligent as to justify a finding that they had no genuine belief in its adequacy, for this again is fraud. It does no more than say that if less than this is proved, if there has been neither reckless misstatement nor insincere profession of an opinion, but only honest blunder, the ensuing liability for negligence is one that is bounded by the contract, and is to be enforced between the parties by whom the contract has been made.

*Id.* at 189, 174 N.E. at 449. Plaintiffs' proposed addition of a claim for negligent misrepresentation is based on a misconception of New York law, and in any case, is not supported by appropriate factual allegations. Thus, the plaintiffs' motion to amend the complaint will be denied.

To summarize the Court's ruling today, Harper's contract claim is dismissed for lack of standing. Plaintiff PASS is barred from recovering consequential damages on its contract claim. Both plaintiffs are barred in their fraud claim from seeking

damages for lost profit. Finally, plaintiffs may not amend their complaint to add an inappropriate claim for negligent misrepresentation.

## ORDER

In accordance with the attached Memorandum, it is this 11th day of May, 1988, by the United States District Court for the District of Maryland, ORDERED:

1. That the motion for partial summary judgment filed by defendant Quick Tax, Ltd. BE, and the same IS, hereby GRANTED IN PART AND DENIED IN PART in accordance with the attached memorandum;

2. That plaintiffs' motion to amend the complaint BE, and the same IS, hereby DENIED; and

3. That a copy of this Memorandum and Order be mailed to counsel for the parties.