Earl RONEKER, Plaintiff,

v.

KENWORTH TRUCK COMPANY and
Detroit Diesel Corp., Defendants.

No. 95–CV–125H.

United States District Court,
W.D. New York.

Sept. 19, 1996.

Charles J. Marchese, Gleichenhaus, Marchese & Falcone, P.C., Buffalo, NY, for Plaintiff.

Mary Jo Herrscher, Damon & Morey LLP, Buffalo, NY, for Defendant Kenworth Truck Company.

Larry Kerman, Cohen, Swados, Wright, Hanifin, Bradford & Brett, LLP, Buffalo, NY, for Defendant Detroit Diesel Corporation.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct all further proceedings in this matter, including entry of judgment, in accordance with 28 U.S.C. § 636(c). Defendants Kenworth Truck Company ("Kenworth") and Detroit Diesel Corp. ("DDC") have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, defendants' motions are granted in part and denied in part.

### BACKGROUND

Plaintiff is a self-employed truck driver. On December 31, 1992, he purchased a 1993 Kenworth T600B truck, which contained an engine manufactured by DDC. Kenworth's warranty agreement covering the sale provided:

> [E]xcept for engine, engine brake, automatic transmission, tires, wheels and/or rims, and fifth wheel, which are warranted

directly to you by their respective manufacturers, ... [the vehicle] will be free from defects in materials and workmanship during the time and mileage periods set forth in the Warranty Schedule and appearing under normal use and service.

\* \* \* \* \* \*

Your sole and exclusive remedy against Kenworth ..., arising from your purchase and use of this vehicle, is limited to the repair or replacement of defective materials or workmanship at Authorized Kenworth Class 8 Dealers....

WARRANTY DISCLAIMER AND LIMITATIONS OF LIABILITY

EXCEPT FOR THE ABOVE WARRANTY, KENWORTH ... MAKE[S] NO OTHER WARRANTIES, EXPRESS OR IMPLIED, AND MAKE[S] NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

IT IS AGREED THAT KENWORTH ... SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES including, but not limited to: loss of income; damage to vehicle, attachments, trailers and cargo; towing expenses, attorney's fees and the liability you may have in respect to any other person.

(Item 24, Ex.F(B)).

The DDC warranty covering the engine[1] provided:

**Defects**

This warranty covers Engine REPAIRS to correct any malfunction occurring during the WARRANTY PERIOD resulting from defects in material or workmanship.

**Repairs**

To obtain warranty repairs, you must request the needed repairs within the WAR-

RANTY PERIOD from an authorized DDC service outlet. Only new genuine parts or remanufactured parts or components supplied or approved by DDC will be used. DDC may, at its discretion, replace rather than repair components....

\* \* \* \* \* \*

**Incidental or Consequential Damages**

DDC is not responsible for incidental or consequential costs or expenses which the owner may incur as a result of a malfunction or failure covered by this warranty, such as communication expenses, meals, lodging, overtime, towing, loss of use of the Engine or vehicle ("downtime"), loss of time, inconvenience, cargo loss or damage, and other similar costs and expenses.

**Other Limitations**

The performance of REPAIRS is the exclusive Owner's remedy under this warranty. DDC does not authorize any person to assume or create for it any other obligation or liability in connection with the Engine or the Accessories.

THIS WARRANTY AND THE EMISSIONS CONTROL WARRANTY ARE THE ONLY WARRANTIES APPLICABLE TO THE ENGINE AND ACCESSORIES AS USED IN ON-HIGHWAY VEHICLE APPLICATIONS. [DDC] MAKES NO OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. [DDC] SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES AS DESCRIBED ABOVE.

(Item 21, Ex.A).

Plaintiff claims that he began having problems with the truck almost immediately after he bought it. On October 19, 1993, plaintiff's attorney Susan M. Hassinger, Esq., wrote to Mr. Daniel Perryman, Service Manager for Kenworth of Indianapolis, Inc. (The Kenworth dealership from whom plaintiff bought the truck), detailing the following problems:

1. Despite three front-end alignments and at least 15 service visits, the steering wheel

---

**1.** As set forth in the affidavit of DDC's Vice President and General Counsel John F. Farmer, the language in the DDC warranty covering the engines in vehicles delivered on or after January 1, 1993, differs somewhat from the language in the warranty covering engines in vehicles delivered prior to that date (*see* Item 21, Exs. A, B).

While the record is unclear with respect to the precise date of delivery of the 1993 Kenworth truck, neither plaintiff nor DDC has claimed that the language differences are material to the determination of DDC's summary judgment motion.

shimmied and plaintiff had to purchase new steering tires twice before reaching 100,000 miles.

2. The engine was consuming five times the normal amount of oil, and plaintiff had to have an oil pan leak repaired. His attorney stated in the letter that plaintiff "does not want the motor to be overhauled. [Plaintiff] purchased a brand new vehicle, not one with an overhauled, refurbished motor."

3. The transmission did not properly shift from 7th to 8th gear, it "hammered" when going into gear, it "howled" at various speeds, and the gearshift lever vibrated and rattled.

4. The hood was repaired for misalignment, but a piece of the hood was still missing.

5. The electronic tachometer "wandered."

The letter stated that, in light of these problems, plaintiff was "seeking replacement with a new vehicle ... because it appears that with so many things wrong within the first year of operation, it is quite clearly a lemon and does not meet Kenworth's high standards or its warranties" (Item 20, Ex.F).

The repair invoices produced by plaintiff during discovery in this case (attached as Ex. F. to Item 24) indicate the following:

| DATE | MILEAGE | PROBLEM | EXHIBIT |
|---|---|---|---|
| 1/4/93 | 2,431 | doors, air leak, fuel gauge | J (attached to Item 24, Ex. F) |
| 1/19/93 | 8,157 | oil leak, timer | D |
| 1/26/93 | 11,154 | axle gasket leak | J |
| 2/1/93 | 13,377 | oil leak | D |
| 2/4/93 | 14,236 | oil leak | G |
| 3/1/93 | 24,650 | front and rear alignment | I |
| 3/8/93 | 28,143 | front alignment | J |
| 4/12/93 | 39,905 | vibration, air compressor | J |
| 4/23/93 | 45,073 | window regulator, hood | L |
| 8/20/93 | 87,984 | fuel filter base | N |
| 9/8/93 | 90,881 | air restriction gauge | D |

| DATE | MILEAGE | PROBLEM | EXHIBIT |
|---|---|---|---|
| 2/3/94 | 149,052 | forward differential | K |
| 5/3/94 | 170,377 | oil leak | F |
| 5/9/94 | " | air conditioning | M |

In addition, purchase invoices indicate that plaintiff purchased 55–gallon barrels of oil on March 1, June 24 and November 1, 1993, and January 13 and March 20, 1994 (Item 24, Ex. E). Plaintiff purchased new tires on March 8, July 23 and December 19, 1993, and May 3, 1994 (id., Ex. H).

On November 11, 1994, plaintiff's attorney Charles J. Marchese, Esq., wrote to Kenworth's attorney stating that plaintiff was continuing to have front end and engine problems with the truck. Plaintiff's attorney stated that DDC "has refused to meet with [plaintiff] and instead offers a rebuilt engine as a solution, one my client is adamantly opposed to as the engine is obviously defective and a new engine should have been provided" (Item 20, Ex. D). Mr. Marchese also detailed an additional problem with the truck's rear end that necessitated repair work involving a rebuilt unit, which "voided the original 500,000 mile warranty" (id.). Mr. Marchese demanded replacement of the truck with a new Kenworth vehicle, and reimbursement for "one-half of [plaintiff's] out-of-pocket loss over the past two years (id.)."

On December 19, 1994, plaintiff traded in the 1993 truck for a 1995 Kenworth T600 (Item 20, Ex. H). He received a $60,000.00 trade-in allowance (id.).

Plaintiff filed this action on February 21, 1995, presumably on the basis of diversity jurisdiction (although there are no jurisdictional or venue allegations in the complaint) (Item 1).[2] He alleges that he "suffered damages such as loss of income, increased oil expense, increased tire expense [and] other related expenses due to the vehicle's lack of fitness for purpose of its intended use and the cost of replacing the vehicle with one fit

---

2. Plaintiff also sued Kenworth of Indianapolis, Inc., the dealership from which he purchased both the 1993 and 1995 vehicles. In a report and recommendation dated July 5, 1995, Magistrate Judge Edmund F. Maxwell recommended that the district court grant Kenworth of Indianapolis' motion to dismiss for lack of personal jurisdiction (Item 9). By order dated September 12, 1995 (Item 10), Hon. Richard J. Arcara adopted Judge Maxwell's report and recommendation.

for the intended use" (Item 1, ¶ 14). He also claims that defendants breached their written warranties "that the vehicle will be free from defects in materials and workmanship and that the vehicle and engine were merchantable and fit for their particular purpose" (*id.*, ¶ 18). He further alleges that Kenworth breached its contract with respect to several specifications of the 1995 vehicle (*id.*, ¶ 23). He seeks "actual, consequential and replacement damages" in the amount of $650,000.00.

Both Kenworth and DDC move for summary judgment on the ground that the breach of warranty claims and consequential damages alleged in the complaint are barred as a matter of law by the provisions of the respective warranties covering the sale.

### DISCUSSION

#### A.  Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. AnnTaylor, Inc., supra*, 933 F.2d at 167.

#### B.  Breach of Warranty.

In this case, plaintiff alleges that both Kenworth and DDC failed to remedy the numerous problems he had with the 1993 vehicle and engine, causing significant "down time" resulting in loss of income and other consequential damages. Defendants argue that the language in their respective warranties precludes plaintiff's claims for consequential damages and for breach of implied warranty of merchantability or fitness for a particular purpose.

Section 2–719 of the New York Uniform Commercial Code provides:

**Contractual Modification or Limitation of Remedy**

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

N.Y.U.C.C. § 2–719.

■ Here, the warranties both exclude consequential damages and limit plaintiff's remedy to repair and replacement. Plaintiff argues that the remedy of repair and replacement failed of its essential purpose of this case, and that therefore the exclusion of consequential damages can be disregarded under N.Y.U.C.C. § 2–719(2). This precise question was addressed in *Cayuga Harvester, Inc. v. Allis–Chalmers Corp.*, 95 A.D.2d 5, 465 N.Y.S.2d 606 (4th Dept.1983). In that case, the Fourth Department held that an exclusion of consequential damages under § 2–719(3) should be given effect even where the plaintiff has shown under § 2–719(2) that the limited remedy of repair and replacement has failed of its essential purpose. According to the Fourth Department:

> "The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. The Code ... tests each by a different standard. The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable. We therefore see no reason to hold, as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding consequential damages."

*Id.*, 95 A.D.2d at 16, 465 N.Y.S.2d at 614 (quoting *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081, 1086 (3d Cir.1980)); *see also Siemens Credit Corp. v. Marvik Colour, Inc.*, 859 F.Supp. 686, 694

(S.D.N.Y.1994). As explained in the *Cayuga Harvester* case:

> The purposes of the two clauses are totally discrete: that of the first is to restrict defendant's obligations under the transaction to repairing or replacing defective parts, while that of the second is to rule out a specific type of damage. Each clause stands on its own and may be given effect without regard to the other.

*Cayuga Harvester, supra,* 95 A.D.2d at 14, 465 N.Y.S.2d at 613. Thus, even if the plaintiff succeeds in establishing that the limited remedy of repair has failed of its essential purpose, an exclusion of consequential damages that is not unconscionable will be given effect "where the failure of the repair and replacement warranty is not due to bad faith or willfully dilatory conduct...." *Id.*, 95 A.D.2d at 15, 465 N.Y.S.2d at 614.[3]

■ Under New York law, therefore, a sales contract limiting the buyer's remedy to repair or replacement and excluding the recovery of consequential damages is subject to a two-part analysis to determine (1) whether the limited remedy failed in its essential purpose, and (2) whether the exclusion of consequential damages was unconscionable. *Siemens, supra* at 694–96; *Cayuga Harvester, supra.* The court now turns to this two-part analysis.

### 1. Failure of Essential Purpose.

■ Whether a limited remedy in a contract fails in its essential purpose is a question of fact. *Siemens Credit Corp., supra* at 695 (citing *Piper Acceptance Corp. v. Barton,* 1987 WL 5801, *2 (S.D.N.Y.1987); *Cayuga Harvester, supra,* 95 A.D.2d at 10–11, 465 N.Y.S.2d at 611). A remedy fails in its essential purpose when, while it may have appeared fair and reasonable at the inception of the contract, as a result of later circumstances it operates to deprive a party of a substantial benefit of the bargain. *Siemens Credit Corp., supra; Cayuga Harvester, supra,* 95 A.D.2d at 11, 465 N.Y.S.2d at 611; *see also* N.Y.U.C.C. § 2–719, Official Comment 1. As explained in *Cayuga Harvester:*

---

**3.** The complaint in this case does not allege, and the record before the court does not suggest, bad

faith or dilatory conduct on the part of either Kenworth or DDC.

The damage to the buyer is the same whether the seller diligently but unsuccessfully attempts to honor his promise or acts negligently or in bad faith. Moreover, a "delay in supplying the remedy can just as effectively deny the purchaser the product he expected as can the total inability to repair. In both instances the buyer loses the substantial benefit of his purchase."

*Cayuga Harvester, supra* (quoting *Chatlos Systems, supra,* 635 F.2d at 1085); *see also Philip M. Damashek, P.C. v. Wang Labs., Inc.,* 150 A.D.2d 151, 153, 540 N.Y.S.2d 429, 432 (1st Dept.1989) (limited warranty may be avoided when warrantor fails to correct the defect within a reasonable period of time).

■ In this case, plaintiff has made a sufficient *prima facie* showing for this court to find that material factual issues exist as to whether the limited remedy of repair or replacement failed of its essential purpose. Plaintiff alleges that he repeatedly took the truck in for repairs, and that the dealer was unable to repair the various problems. As outlined above, plaintiff has produced copies of repair bills, work orders and purchase invoices for work performed on the 1993 vehicle during the two-year warranty period (*see* Table at p. 5, *infra,* and Item 24, Ex. F(D–O)). Apparently, plaintiff has not produced a detailed repair log or list of warranty claims. *See Cayuga Harvester, supra,* 95 A.D.2d at 12, 465 N.Y.S.2d at 612. However, the documents in the record at least raise a material issue of fact as to whether the remedy of repair failed of its essential purpose.

Defendants claim that they are entitled to summary judgment on the limitation of remedy issue because plaintiff refused to accept the remedy of repair offered by defendants and instead unilaterally demanded replacement of the 1993 truck with an entirely new one. However, whether plaintiff's demands were reasonable under the circumstances likewise presents an issue of fact for the jury. *See, e.g., Chatlos Systems, supra,* 635 F.2d at 1085–86 ("Viewed from the buyer's standpoint, the repair remedy's aim is to provide goods that conform to the contract for sale and do so at an appropriate time."). In addition, neither Kenworth's nor DDC's warranty expressly limits the remedy to repair or replacement using only remanufactured parts.

Based on the record before the court, I find that the question of whether the limited remedy of repair or replacement warranted by defendants failed of its essential purpose should be left for the jury to determine "upon proof of the circumstances occurring after the contract [was] formed." *Cayuga Harvester, supra,* 95 A.D.2d at 10–11, 465 N.Y.S.2d at 611 (citing *Johnson v. John Deere Co.,* 306 N.W.2d 231, 237, 238 (S.D. 1981)). Should plaintiff prevail on this question, he would be free to pursue his remedies under other provisions of the U.C.C. as if the limited remedy did not exist. *Id.,* 95 A.D.2d at 12, 465 N.Y.S.2d at 612; *Siemens Credit Corp., supra,* 859 F.Supp. at 696 (proof that express warranty failed entitles plaintiff to sue for damages for breach of implied warranty under N.Y.U.C.C. § 2–714(2)).

## 2. Exclusion of Consequential Damages.

■ As discussed above, even if plaintiff succeeds in establishing that the repair and replacement warranty failed of its essential purpose, the exclusion of consequential damages will remain in effect unless the exclusion is unconscionable. Consequential damages are defined in the U.C.C. as follows:

Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

N.Y.U.C.C. § 2–715(2). "The determination of unconscionability is a matter of law for the court to decide." *Industralease Automated & Scientific Equip. Corp. v. R.M.E. Enterprises, Inc.,* 58 A.D.2d 482, 488, 396 N.Y.S.2d 427, 431 (2nd Dept.1977); *see* N.Y.U.C.C. § 2–302(1).

■ Unconscionability requires "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir. 1965) (quoted in *State of New York v. Avco Financial Serv., Inc.,* 50 N.Y.2d 383, 389, 429 N.Y.S.2d 181, 185, 406 N.E.2d 1075 (1980). "The basic test is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." N.Y.U.C.C. § 2–302, Official Comment 1. Factors that courts have considered in determining unconscionability include disparity in bargaining power, an atmosphere of haste and pressure, and lack of understanding by one of the parties. *Siemens Credit Corp., supra,* 859 F.Supp. at 695 (citing cases).

■ In cases involving transactions of a commercial nature, courts have rarely found unconscionability. *Cayuga Harvester, supra,* 95 A.D.2d at 20, 465 N.Y.S.2d at 617. Indeed, "there is a presumption of conscionability when the contract is between businessmen in a commercial setting." *American Dredging Co. v. Plaza Petroleum Inc.,* 799 F.Supp. 1335, 1339 (E.D.N.Y.1992); *see* N.Y.U.C.C. § 2–719(3).

■ In this case, the transaction was indisputably commercial in nature. The record shows that plaintiff is a self-employed truck driver who has been in the business for over thirty years (Item 20, Ex. F). He had purchased several Kenworth vehicles prior to purchasing the 1993 vehicle (*id.,* Ex. D) and an additional one after the 1993 vehicle. Plaintiff signed the Kenworth warranty agreement, acknowledging that he had read the agreement and understood and accepted its terms (Item 24, Ex. F(B)). Although

plaintiff may not have the bargaining power to persuade defendants to change their warranty language, I refuse to find that the warranty claim was unconscionable.

Accordingly, plaintiff is barred from recovering consequential damages. The record is unclear as to whether plaintiff is claiming damages that are not consequential in nature. To the extent that he is, plaintiff can proceed to trial on the first issue—whether the remedy of repair failed of its essential purpose.

■ In this court's view, "the precise demarcation between direct and consequential damages is a question of fact ... [which] must be left for resolution at trial." *American Elec. Power Co. v. Westinghouse Elec. Corp.,* 418 F.Supp. 435, 459–60 (S.D.N.Y. 1976). In making its determination, the jury should consider the commercial context in which the contract was made as well as the express language of the exclusion clauses themselves. *Id.* at 459. "Suffice it to say that the scope of direct damages recoverable by plaintiff[ ], should [he] prevail at trial, must provide a 'fair quantum of remedy for the breach of the obligations or duties outlined in the contract.'" *Id.* at 460 (quoting N.Y.U.C.C. § 2–719, Official Comment 1).

### CONCLUSION

For the foregoing reasons, defendant Kenworth's motion for summary judgment (**Item 23**) and defendant DDC's motion for summary judgment (**Item 18**) are granted in part and denied in part.

**SO ORDERED.**