ABELE TRACTOR AND EQUIPMENT
COMPANY, INC., Plaintiff,

v.

VARITY CORPORATION; Massey–Ferguson, U.K., Ltd.; MF Industrial, Ltd.;
Massey–Ferguson Industrial Machinery,
Inc.; Defendants.

No. 92–CV–1233.

United States District Court,
N.D. New York.

Sept. 25, 1997.

Cade, & Saunders, PC., Michael A. Hiser, William J. Cade (of counsel), Albany, NY, for Plaintiff.

DeGraff, Foy, Holt–Harris & Kunz, LLP, James T. Potter, Scott C. Paton (of counsel), Albany, NY, for Defendants.

## MEMORANDUM-DECISION & ORDER

HURD, United States Magistrate Judge.

Presently before the Court is defendants' motion for summary judgment. Plaintiff submitted opposition, to which defendants replied. Oral argument was heard on May 8, 1997, in Utica, New York.

## I. FACTS

On October 25, 1983, plaintiff Abele Tractor and Equipment Co., Inc. ("Abele Tractor") entered into a Distributor Agreement ("Agreement" or "contract") with defendant Massey–Ferguson (United Kingdom) Limited. The Agreement provided specific terms

for Abele Tractor to sell, distribute, and service industrial machinery provided by defendants Massey–Ferguson, U.K., Ltd.; MF Industrial, Ltd.; and Massey–Ferguson Industrial Machinery, Inc. (collectively "Massey–Ferguson"[1]). The type of industrial machinery purchased by Abele Tractor under the Agreement which is at issue in this lawsuit is the Tractor Backhoe Loader ("TBL"). The front of the TBL, the loader, is used in excavating large volumes of earth. The backhoe, at the other end of the machine, moves smaller amounts of earth and is designed to excavate below the surface grade. The backhoe is used in areas where precise control is required, such as near building foundations and around buried utilities. The backhoe consists of a bucket at the end of a boom, which functions by hydraulic pressure.

Possibly as early as 1985, Abele Tractor received customer complaints regarding the functions of the backhoe. These complaints were forwarded to Massey–Ferguson. These complaints, primarily related to control of the bucket, were determined to be a result of difficulties with the hydraulic system and, more specifically, a hydraulic control valve. Abele Tractor attempted to remedy the problems by making adjustments to the hydraulic system, but apparently was convinced that installation of a new type of control valve was necessary to completely and permanently remedy the problems. Abele Tractor was in near-constant contact with Massey–Ferguson during the period when the TBLs exhibited these problems, approximately 1985 through mid–1988. At one point, Abele Tractor worked directly with a control valve supplier, Husco International, in attempting to find or develop a new control valve for the TBLs. When Massey–Ferguson obtained prototype valves from Husco, one was given to Abele Tractor for field testing in a TBL. Eventually, Husco control valves replaced the old, defective valves. Massey–Ferguson provided new Husco valves to distributors, including Abele Tractor, for warranty installations in TBLs which had been sold with defective parts.

Beginning in approximately mid–1988, all new TBLs shipped to distributors by Massey–Ferguson contained the new Husco control valve. However, some delay in shipment was necessitated by Massey–Ferguson replacing the valve in new TBLs which had been manufactured prior to availability of the new Husco valve. Abele Tractor requested that its orders not be delayed, preferring to install the new valve upon arrival. Massey–Ferguson therefore shipped several new TBLs to Abele Tractor prior to installing the new valves, instead of just providing the new valve with the TBL for installation by Abele Tractor.

Abele Tractor, in its complaint, seeks rescission of the Agreement due to alleged breach and inability by Massey–Ferguson to perform its obligation to supply non-defective TBLs. As a consequence of rescission, Abele Tractor would be permitted to collect numerous items of damages which would be precluded under the contract clause limiting recovery for defective parts to repair or replacement. Additionally, Abele Tractor seeks *quantum meruit* recovery for its efforts in adapting and field testing the new Husco hydraulic control valve, which is not provided for in the Agreement. Thus, the contract must be rescinded in order for Abele Tractor to recover any of the damages sought.

The defendants move for summary judgment based upon a statute of limitations bar. Defendants further argue that rescission is not warranted and that *quantum meruit* recovery is barred by the contract and by Abele Tractor's voluntary rendering of services.

## II. DISCUSSION

### A. Rescission

The asserted basis for rescission is that the quality of the product was so defective, and Massey–Ferguson's attempts to remedy the problems were so deficient, as to constitute an inability to perform its obligation

1. Also included in this term collectively referencing defendants is defendant Varity Corporation, allegedly the whole owner of subsidiary Massey– Ferguson (UK) Ltd. The precise relationship among the defendants is unimportant to the matters at issue herein.

under the warranty provisions of the contract to repair or replace the defective parts. Abele Tractor does not in any way allege that Massey–Ferguson perpetrated a fraud regarding the defective TBLs or that Massey–Ferguson fraudulently induced Abele Tractor to enter into the Agreement.

■ The Agreement between Abele Tractor and Massey–Ferguson is valid on its face. Under the Agreement Abele Tractor, as the Distributor, has waived any right to remedies provided pursuant to any law, which would increase the amount of compensation to which Abele Tractor is entitled beyond that provided for in the Agreement. The Agreement provides:

> The Distributor hereby waives all rights which it may have under any law which is effective within the Territory or elsewhere and which provides for the payment to the Distributor of any commission or compensation or remuneration to which the Distributor is not expressly entitled under any provision of this Agreement.

(Potter Aff. Ex. I at 9 ¶ 18.3.) Since the Agreement expressly limits recovery for defective parts to repair or replacement and excludes consequential and commercial losses of any type,[2] rescission of the contract would permit recovery above that for which the contract provides. Thus, Abele Tractor contractually waived the right to the remedy of rescission under New York law. Absent fraud, this contractual provision prevents rescission of the Agreement. *See Keywell Corp. v. Weinstein*, 33 F.3d 159, 165 (2d Cir.1994); *In re Hale Desk Co.*, 97 F.2d 372, 373 (2d Cir.1938); *Teleflex Inc. v. Collins & Aikman Prod., Co.*, 961 F.Supp. 368, 371–73 (D.Conn.1996)(following New York law);

*Schine v. Schine*, 254 F.Supp. 986, 988 (S.D.N.Y.)(waiver of fraud claim contrary to New York public policy but waiver of other causes of action permitted), *appeal dismissed*, 367 F.2d 685 (2d Cir.1966); *see also McCready v. Lindenborn*, 172 N.Y. 400, 409, 65 N.E. 208 (1902)(measure of damages set forth in contract is exclusive remedy); *Thomson–Houston Elec. Co. v. Durant Land Imp. Co.*, 144 N.Y. 34, 48, 39 N.E. 7 (1894)(party held to limit of recovery set forth in contract). Accordingly, the Agreement stands and all of its provisions apply.

Since Abele Tractor waived any right to seek rescission, the question of whether or not there are any possible grounds for rescission need not be considered. However, without deciding the issue, a review of the submissions of the parties strongly suggests that the alleged breach of the Agreement was not " 'material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.' " *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir.1980) (quoting *Callanan v. Powers*, 199 N.Y. 268, 284, 92 N.E. 747 (1910)); *Siemens Credit Corp. v. Marvik Colour, Inc.* 859 F.Supp. 686, 694 (S.D.N.Y.1994)(under N.Y.U.C.C., contract provision limiting recovery to repair or replacement stands unless it fails of its essential purpose and provision precluding consequential damages stands unless it is unconscionable).

## B. The Agreement

■ The damages sought in the first cause of action by Abele Tractor for uncompensated time for repairs and replacement of parts, loaner TBLs, lost business, lost sales, and futile demonstrations are prohibited by

---

2. The Agreement provides that standard Terms and Conditions of Sale, including the product warranty, applies to each order. (Potter Aff. Ex. I at 4 ¶ 8.1.) The Terms and Conditions of Sale as well as the warranty provide that the exclusive remedy for defective parts is repair or replacement pursuant to the product warranty. Id. Ex. J at 9, Ex. K at 2. The warranty provides, in pertinent part that

> The company will repair or replace, at its option, without charge for parts or labor any defective or part.... THIS WARRANTY IS IN LIEU OF ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PURPOSE

OR OTHER REPRESENTATIONS, WARRANTIES OR CONDITIONS, EXPRESS OR IMPLIED.... IN NO EVENT SHALL THE OWNER BE ENTITLED TO RECOVER FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES SUCH AS BUT NOT LIMITED TO, LOSS OF CROPS, LOSS OF PROFITS OR REVENUE, OTHER COMMERCIAL LOSSES, INCONVENIENCE OR COST OF RENTAL OR REPLACEMENT EQUIPMENT.

Id. Ex. K at 2. Accordingly, under the contract recovery for defective machines is limited to repair or replacement.

the Agreement. Similarly, the Agreement requires Abele Tractor to disclose improvements and inventions related to Massey–Ferguson products (without providing for additional compensation). (Potter Aff. Ex. I at 6 1 11.3.) Therefore, the *quantum meruit* recovery sought by Abele Tractor in the second cause of action was waived by Abele Tractor.

 Finally, the valid Agreement between Abele Tractor and Massey–Ferguson provides that the contract and its interpretation are governed by the laws of England. *Id.* Ex. I ¶ 17.1. Any disputes concerning the Agreement "shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by a single arbitrator appointed in accordance with such Rules, and the place of arbitration shall be in London, England." *Id.* ¶ 17.3; *see Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519–20, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974)(upholding international arbitration clause).

The parties have not presented any English law pertaining to the statute of limitations, or any other matter. Moreover, any question regarding a statute of limitations bar would properly be resolved by arbitration, pursuant to the contract. Accordingly, the question of whether a statute of limitations bars this action will not be considered.[3]

## III. CONCLUSION

By the Agreement, which is valid on its face and not fraudulent, Abele Tractor waived its right to seek rescission and any remedies above and beyond repair and replacement for defective parts. Further, the Agreement is governed by English law and provides for arbitration of any disputes.

Accordingly,

Defendants' motion for summary judgment is GRANTED and the Clerk of the Court is directed to enter judgment dismissing the complaint in its entirety.

IT IS SO ORDERED.

---

**3.** If this issue were properly before the court and New York law were applicable, a review of the submissions indicates that the four-year statute of limitations for contracts for the sale of goods, N.Y.U.C.C. § 2–725 (McKinney 1993), would bar the action.